**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Ernst, | No. CV 07-434-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Wheeler Construction, Inc., | |
| Defendant. | |

In this case, Plaintiff sued Defendant for allegedly violating the Americans with Disabilities Act ("ADA"). Plaintiff has two claims: 1) failure to reasonably accommodate, and 2) failure to interact. Doc. #1. Pending before the Court is Defendant's motion for summary judgment.

**I.    Factual Background**

From November 2004 to July 2005, Plaintiff worked for Defendant as a heavy equipment operator. On April 22, 2005, Plaintiff suffered a back injury. Plaintiff saw a doctor who recommended substantial limitations on Plaintiff's ability to work based on this injury. Neither party disputes that through June 2, 2005, Defendant honored these limitations by placing Plaintiff on light duty work.

On June 2, 2005, Plaintiff again saw a doctor who said that Plaintiff could perform "modified duty" work. Specifically, Plaintiff's doctor said "[Plaintiff] is released for modified work duty and limitations include: no operation of scraper and no operation of

machinery that results in heavy bouncing or sudden jerking movements." Doc. #36, Ex. D. The parties dispute whether the "accommodations" provided during this modified duty period were reasonable.

On July 14, 2005, Plaintiff was reassigned to a new crew. On July 15, 2005, Plaintiff quit going to work based on a permanent back injury allegedly suffered at work at some point after the April 22, 2005 back injury. For purposes of the pending motion, neither party disputes that this second back injury caused Plaintiff to be permanently disabled as of July 15, 2005 and that as a result of this permanent disability, Plaintiff is no longer qualified for his position. Thus, the only issue in this case is whether Defendant violated the ADA from June 2, 2005 to July 15, 2005.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create

a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### III. Americans with Disabilities Act

#### A. Reasonable Accommodation

As indicated above, Count One of Plaintiff's Complaint is captioned, "Failure to Reasonably Accommodate." Doc. #1 at 3. However, the failure to reasonably accommodate, standing alone, is not a claim under the ADA.

> In order to qualify for relief under the ADA, the plaintiff must show that: (1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability.

*Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156-57 (9th Cir. 2000).

Defendant moved for summary judgment on the following theories: (1) during the relevant time period (June 2, 2005 to July 15, 2005) Plaintiff was not "disabled" as the term is used within the ADA (Doc. #35 at 7); and (2) even if Plaintiff was "disabled," Defendant provided reasonable accommodation (Doc. #35 at 8).[1]

#### 1. Disability

Whether Plaintiff's back condition constituted a disability under the ADA involves three inquiries: (1) whether Plaintiff's condition was a physical impairment, (2) whether the life activities from which he was impaired amounted to major life activities; and (3) whether Plaintiff's impairment substantially limited him from performing the identified major life activities. *Gribben v. United Parcel Service, Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008).

With respect to the first inquiry, the Court finds that Plaintiff's back injury was a physical impairment. With respect to issue two:

---

[1] In its reply, Defendant argued for the first time that it is also entitled to summary judgment because Plaintiff did not suffer an adverse employment action.

- 3 -

> "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. This list is not exhaustive. For example, other major life activities include, but are not limited to sitting, standing, lifting, and reaching.

29 C.F.R. Pt. 1630 App., § 1630.2(i).

Plaintiff claims that from April 22, 2005 forward, the following activities were impacted by his injury: walking, bending, lifting items over 10 pounds, and sleeping. Doc. # 37-5, Ex. 3, ¶¶ 7-10. Using the C.F.R.'s definition, the Court finds that the activities identified by Plaintiff are major life activities.

Defendant disputes whether Plaintiff was actually "impaired" from these major life activities based on Plaintiff's doctor's opinions. Plaintiff counters that his testimony, standing alone, is sufficient in this circuit to establish his "disability" and that he does not need medical opinions to confirm his self-diagnosis. Generally, Plaintiff is correct. *See Gribben*, 528 F.3d at 1170 ("[Plaintiff's] testimony alone regarding the significance of his impairment is sufficient to create a genuine issue of material fact at the summary judgment stage. *See Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005) ('Our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact.')"); *see also McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir. 1999); *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003).

Notwithstanding this law, Defendant argues that Plaintiff's affidavit is self-serving and, in essence argues that Plaintiff's affidavit is discredited by the actual medical evidence in this case and Plaintiff's own testimony. There is legal support for Defendant's position: "to survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment." *Head*, 413 F.3d at 1059.

As discussed above, following the June 2, 2005 visit, Plaintiff's doctor determined that Plaintiff could not operate a scraper and that Plaintiff could not operate machines that involved heavy bouncing or sudden jerking movements. Doc. #36, Ex. D. In articulating the

- 4 -

1 limitations, the doctor said the limitations "include," but the doctor did not specify whether 2 these were the only limitations. Doc. #36, Ex. D. Further, the doctor did not opine regarding 3 Plaintiff's ability to walk, bend or sleep, which are the major life activities Plaintiff claims 4 were affected by his injury.[2] On this record, the Court cannot conclude that as a matter of 5 law the doctor's opinion is so inconsistent with Plaintiff's testimony that no reasonable jury 6 could believe Plaintiff. Specifically, it is possible that someone who cannot withstand heavy 7 bouncing or sudden jerking movements is also impaired in his ability to walk, bend or sleep. 8 Because it is possible that a reasonable jury could believe Plaintiff, there is sufficient 9 evidence to create a question of fact for trial as to whether Plaintiff is impaired in these major 10 life activities. *See Gribben*, 528 F.3d at 1170.

11 Next, Defendant argues that Plaintiff's own testimony is so inconsistent with his 12 affidavit that no reasonable jury could believe Plaintiff that he was disabled. Specifically, 13 Plaintiff testified that from June 29, 2005 to July 4, 2005 he went to Wyoming to pack and 14 move his belongings to Arizona. Doc. #36, Ex. F, Bates #000115; Doc. #36, Ex. B, at 93. 15 The moving entailed packing and loading a truck for two days, including Plaintiff assisting 16 with carrying and loading furniture into the truck. Doc. #36, Ex. B, at 94. Plaintiff then 17 drove the Ryder truck from Wyoming to Phoenix for a period of two days. *Id.* at 93-93. 18 Defendant argues that Plaintiff's ability to perform all of these tasks so undermines his claim 19 that he was "disabled" within the meaning of the ADA during this exact same time period 20 that no reasonable jury could conclude he was substantially limited in the major life activities 21 of walking, bending, sleeping, and lifting.

---

[2] The Court has not included Plaintiff's claim that he is affected in the major life activity of lifting over 10 pounds in reaching this conclusion. The reason the Court excluded this activity from the analysis is that Plaintiff's doctor specifically included a lifting limitation for items over 20 pounds in his first diagnosis. Doc. #36, Ex. A. Thus, it would seem odd that such a limitation was omitted in the second diagnosis if it was still a significant issue for Plaintiff. Because of this discrepancy, the Court has not relied on Plaintiff's testimony regarding his lifting limitations.

- 5 -

Certainly this testimony calls into question whether Plaintiff's affidavit that he was severely limited in these major life activities is just self-serving testimony. As the court in *Head* noted, while Plaintiff's testimony alone can be sufficient to establish as issue of fact at the summary judgment phase, Plaintiff's testimony must be something more than just a self-serving affidavit. *Head*, 413 F.3d at 1059. In this case, given that Plaintiff has medical testimony to corroborate that he in fact had some level of back injury, the Court cannot conclude that no reasonable jury could find Plaintiff had limitations in the major life activities of walking, bending, and sleeping. However, this conclusion immediately leads to the third inquiry: i.e. whether Plaintiff was "substantially limited" in these major life activities.

Substantial limitation has two components, one being physical and one being temporal. Specifically, "an impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity." 29 C.F.R. Pt. 1630, App., § 1630.2(j). This is the physical component.[3]

As to the temporal component, "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. Pt. 1630, App., § 1630.2(j). Relying on this temporal

---

[3] Although the regulations suggest that in making this determination, the Court should compare Plaintiff's condition to the population at large, the Ninth Circuit Court of Appeals has made clear that to create an issue of fact at the summary judgment stage, Plaintiff need not present any comparative medical evidence as to how he fairs against the population at large. *See Gribben*, 528 F.3d at 1170; *Rohr v. Salt River Project*, 555 F.3d 850, 858-59 (9th Cir. February 13, 2009). Conversely, in other circuits, courts may look to whether many people in the population suffer similar injuries, such as permanent back pain and limitations related to such pain, to conclude that a plaintiff is not unique within the population. *See Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002) ("[T]he number of Americans restricted by back problems to light work is legion. They are not disabled.").

- 6 -

1  limitation on what qualifies as a disability, courts have held that some back strains do not rise
2  to the level of "disabilities." *See e.g.*, *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 469 (4th
3  Cir. 2002).

4       As to the physical component, Plaintiff's doctor's opinion that Plaintiff was restricted
5  from activities that involved heavy bouncing or sudden jerking movements is sufficient to
6  create an issue of fact as to whether Plaintiff was substantially limited as compared to the
7  population at large. *See* Doc. #36, Ex. D. Obviously, the doctor's opinion does not speak
8  to the major life activities in which Plaintiff avows he was substantially limited. However,
9  the narrow scope of the doctor's opinion could be because the doctor was writing limitations
10 specific to only Plaintiff's work, and not regarding Plaintiff's life in general. In sum, the
11 doctor's findings are not inconsistent with Plaintiff's testimony that he was substantially
12 limited in walking, bending, and sleeping.[4]

13       However, there is no medical evidence in the record that Plaintiff's back strain was
14 anything other than temporary. Specifically, in his first diagnosis, Plaintiff's doctor
15 diagnosed him with "Lumbar Strain" and "Lumbar Pain." *Id.* at Ex. A. The doctor's
16 recommended course of treatment was "patient to have therapy 3 times a week for 2 weeks."
17 *Id.* The doctor's limitations on Plaintiff's ability to work were "in effect until next physician
18 visit." *Id.* Finally, the doctor opined that there would be medical improvement by May 3,
19 2005. *Id.* And medical improvement in fact occurred by the June 2, 2005 visit. *Id.* at Ex.
20 D.

21       "Doctor's evaluations which indicate that an impairment is improving are persuasive
22 evidence that the impairment is expected to by only temporary." *Pollard*, 281 F.3d at 469
23 (citing *Mellon v. Fed. Express, Corp.* 239 F.3d 954, 956-57 (8th Cir. 2001)). Considering this

---

[4] The doctor's findings are arguably inconsistent with Plaintiff's testimony about a substantial limitation in the major life activity of lifting, given that the doctor's first opinion had a lifting restriction and the second opinion did not mention a lifting restriction, thereby removing the prior lifting restriction which was in effect only until the next visit. *Compare* Doc. #36 at Ex. A with Doc. #36 at Ex. D.

- 7 -

persuasive evidence that Plaintiff's condition was temporary, the Court returns to Plaintiff's opinion about his injuries. In his affidavit, Plaintiff avows that on April 22, 2005 he suffered severe and "long-term" back injuries. Doc. #37-5, Ex. 3, ¶ 4. Thus, the Court must determine whether Plaintiff's testimony in the face of this medical evidence is sufficient to create a question of fact as to whether his back injury was more than temporary, which is necessary for the injury to be "substantially limiting" within the ADA's definition of disabled.

Examining closely the Court of Appeals language in cases like *Gribben*, this Court notes that the Court of Appeals allowed Plaintiff to testify not only about which major life activities are impacted, but whether the impact was "substantial." *Gribben*, 528 F.3d at 1171 ("[Plaintiff] also testified that his heart condition substantially limits his ability to walk, run, climb, pull, push, squat, bend, lift, and breathe."). However, a notable distinction between this case and *Gribben* is that the evidence recounted in *Gribben* suggests that no party disputed that the heart condition was permanent.

Here, all the medical evidence suggests that following the April 22, 2005 initial injury (but before Plaintiff's permanent injury as of July 15, 2005), Plaintiff would have medical improvement. The medical improvement is persuasive evidence that Plaintiff was not permanently impaired. This conclusion is supported by Plaintiff's own actions. Specifically, after being elevated to modified duty work status, Plaintiff was able to load a truck and move all of his belongings from Wyoming to Arizona. These activities show significant improvement from Plaintiff's first diagnosis,[5] and are evidence of only a temporary and improving "lumbar strain." Accordingly, the Court finds that the undisputed medical evidence in this case shows that Plaintiff was not disabled within the meaning of the ADA.

The Court reaches this conclusion recognizing that the Court of Appeals has held that Plaintiff is not required to submit medical evidence and that Plaintiff's testimony alone can

---

[5] The first diagnosis had the following restrictions: "No repetitive lifting over 20 lbs. No bending greater than 0 times per hour. No pushing and/or pulling over 20 lbs of force. Unable to drive company vehicle." Doc. #36, Ex. A.

- 8 -

be enough to create an issue of fact. *Head*, 413 F.3d at 1058. However, in a case like this one, where medical evidence is actually available, this Court concludes that Plaintiff cannot create an issue of fact by offering only his own affidavit with a self-diagnosis in contradiction of a doctor's contemporaneous diagnosis. In other words, the Court finds that no reasonable jury would find in Plaintiff's favor that his self-diagnosis of a "severe and long-term" back injury on April 22, 2005 should be believed over a doctor's diagnosis of a temporary lumbar strain on April 22, 2005, which had improved by June 2, 2005.

Based on the foregoing, the Court finds that the evidence in this case shows that Plaintiff's back injury on April 22, 2005 was temporary, and therefore not "long-term" or "permanent" as is typically required to be disabled within the meaning of the ADA. *See* 29 C.F.R. Pt. 1630, App., § 1630.2(j). Accordingly, Defendant's motion for summary judgment on Plaintiff's entire Complaint will be granted because Plaintiff was not disabled.[6]

### 2. Reasonable Accommodation

Alternatively, even if Plaintiff's testimony in the face of the medical evidence was sufficient to create an issue of fact as to whether Plaintiff was disabled, Defendant is entitled to summary judgment because as a matter of law it provided Plaintiff was reasonable accommodation. Neither party disputes that Plaintiff was qualified, even after his back injury, to perform the essential job functions of a heavy equipment operator. Plaintiff contends, however, the he required an accommodation and that the accommodation provided by Defendant violated the ADA.

As discussed above, after June 2, 2005, Plaintiff's doctor released him to modified duty with the following limitations: "no operation of scraper and no operation of machinery that results in heavy bouncing or sudden jerking movements." Doc. #36, Ex. D. Per Plaintiff's affidavit, following June 2, 2005, he was told to move sand bags and barricades,

---

[6] Neither party has argued that the September 2008 amendments to the ADA apply to Plaintiff retroactively. Accordingly, the Court has not considered whether the changes would affect the result in this case. *See generally Rohr*, 555 F.3d at 860-61 (noting but not deciding this issue).

- 9 -

1 operate a Gannon tractor, operate a front-end loader, and operate a backhoe. Doc. #37-5, Ex.
2 3 at ¶ 34. Plaintiff claims that these tasks "exacerbated" his injuries. *Id.* at ¶ 33. Finally,
3 Plaintiff makes clear that he wanted the accommodation of operating a blade, but that
4 Defendant would not give him that specific accommodation. *Id.* at ¶¶ 16-17, 30-32.

5 Defendant moves for summary judgment on the basis that the jobs Plaintiff avows he
6 was asked to perform were all within his doctor's limitations and, therefore, were a
7 reasonable accommodation. Further, Defendant argues that an employee can not demand the
8 accommodation of his choice, but is only entitled to a reasonable accommodation based on
9 the medical limitations. *See Zivkovic v. Southern Calif. Edison Co.*, 302 F.3d 1080, 1089 (9th
10 Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he
11 requests or prefers, the employer need only provide some reasonable accommodation."
12 (internal quotations omitted)).

13 First, with regard to Plaintiff's claim that on one occasion he was asked to move
14 sandbags and barricades, the Court finds this does not violate the reasonable accommodation
15 requirement because Plaintiff's modified duty release did not contain any lifting restrictions.
16 Additionally, Plaintiff's own testimony regarding his move and the loading of boxes and
17 furniture into a truck shows that no lifting restriction should be implied into this case.

18 Next, the Court must consider whether Defendant has established that the various
19 machines Plaintiff was told to run as an accommodation to the fact that Plaintiff could not
20 run a scraper or anything with heavy bouncing or sudden jerking was reasonable as a matter
21 of law. Plaintiff avows that blades run more smoothly than other equipment. Doc. #37-5,
22 Ex. 3, at ¶ 21. Plaintiff's affidavit is the only evidence Plaintiff offers as to why the blade
23 was the only reasonable accommodation. Thus, Plaintiff has not disputed superintendent
24 Ron Anglin's testimony that the backhoe is a smooth riding piece of equipment. Doc. #36,
25 Ex. E, at 40. As a result, on this record, there is no dispute that the backhoe is a smooth piece
26 of equipment that met Plaintiff's doctor's limitations, even if the Court accepts as true
27 Plaintiff's claim that the blade runs more smoothly than "other equipment" and that the
28 backhoe was within Plaintiff's definition of "other equipment." This conclusion is further

supported by Frank Gray's affidavit wherein he states that he asked Plaintiff if he would run the backhoe and Plaintiff said yes, but that he would prefer to run a blade. Doc. #36, Ex. H. Notably, Plaintiff did not claim he could run only a blade.

Further, Plaintiff does not dispute Frank Gray's affidavit that a Gannon tractor is a light duty piece of equipment within the boundaries of Plaintiff's limitations. Doc. #36, Ex. H. Thus, again on this record, there is no dispute that the Gannon tractor was an acceptable accommodation even accepting as true Plaintiff's avowal that the blade runs more smoothly than "other equipment" and that Plaintiff's use of the phrase "other equipment" included the Gannon tractor.

Finally, the Court considers Plaintiff's claim that on two days he operated a front-end loader. Again, in explaining why he sought the accommodation of the blade, Plaintiff only says it was more smooth than other equipment. Plaintiff does not claim that the front-end loader was not smooth, only that the blade was more smooth. On this record, the Court finds Defendant reasonably accommodated Plaintiff in that the only evidence Plaintiff offers as to why the accommodation he received was insufficient is his opinion that he was not given the smoothest piece of equipment to operate, and not that he was not accommodated within his medical limitations.[7]

Additionally, the Court finds based on the undisputed evidence in this case that on some occasions when Plaintiff requested the accommodation of being able to run the blade, the request was unreasonable given the job-site limitations. Specifically, Frank Gray further avows that at the Fulton Ranch project the only blade on site was being run by the blade's owner/operator, and was not owned by Defendant. Doc. #36, Ex. H. Thus, on this undisputed record, there were at least some points during the relevant time period that

---

[7] Plaintiff does avow that all of the job assignments given to him hurt his back, and that, in his opinion, only the blade would not hurt his back. Doc. #37-5, Ex. 3, ¶¶ 33, 17. However, Plaintiff has cited no case, and the Court has found none, that states that Plaintiff can establish his own physical limitations, which were more restrictive than the articulated medical limitations from Plaintiff's doctor, for purposes of what would be a reasonable accommodation.

- 11 -

Defendant could not offer the blade as an accommodation, and therefore, the alternative accommodations offered were reasonable even though they were not Plaintiff's preferred accommodation. Accordingly, for this additional alternative reason, the Court will grant Defendant's motion for summary judgment on Count One of Plaintiff's complaint.[8]

### 3. Adverse Employment Action

As indicated in footnote 1, Defendant argues that summary judgment is also appropriate because Plaintiff did not suffer an adverse employment action. Because Defendant raised this argument for the first time in its reply, resulting in Plaintiff not having an opportunity to address this argument, the Court will not entertain this theory as a potential alternative basis for granting summary judgment.

## B. Interactive Process

Defendant moves for summary judgment on Count Two of Plaintiff's Complaint "failure to interact" on the following theories: (1) because Plaintiff is not disabled, Defendant had no duty to engage in the interactive process, or, (2) regardless of whether it had a duty to interact, Defendant claims that the facts of this case show Defendant interacted sufficiently to satisfy this duty.[9]

With respect to the duty to interact, the Court of Appeals has stated:

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations....The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process.... Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible.

---

[8] Below, the Court addresses the duty to interact as part of the reasonable accommodation request. The Court's conclusion that Defendant sufficiently engaged in the interactive process is incorporated into this conclusion that Defendant reasonably accommodated Plaintiff as a matter of law.

[9] In its reply, Defendant argues for the first time that the failure to engage in the interactive process is not a free-standing claim that can form the basis of liability.

1  *Humphrey v. Memorial Hospitals Assoc.*, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (internal
2  citations and quotations omitted).

3        As indicated in footnote 9, Defendant argues for the first time in its reply that the duty to interact is not a free-standing claim that can form the basis of Count II of the Complaint. Again, Plaintiff has not had an opportunity to address this argument. Above, when the Court declined to address whether Plaintiff suffered an adverse employment action because it was raised for the first time in the reply, the Court did so because Plaintiff was not put on notice that he needed to come forward with facts to show the adverse employment action. Conversely, whether a claim exists is not a fact based inquiry, but purely a legal one.

10        The Court finds that there is no free-standing claim for a breach of the duty to interact. In other words, the duty to interact arises to prevent an employer from arguing that it did not know or was not aware of what accommodation a disabled employee might need. Instead, it places a duty on the employer (and the employee) in interact about what accommodation is needed and available. However, if there is no interaction, but no accommodation would have been available, there is no independent liability. *See Humphrey*, 239 F.3d at 1138 (noting that the failure to interact will result in liability <u>if</u> a reasonable accommodation would have been possible). Further, if there was no interaction and accommodation would have been available, Plaintiff would not be entitled to two sets of damages; one amount for the ADA violation and a second additional amount for the breach of the duty to interact. Plaintiff would be limited to the remedies in the statute for the ADA violation. *See id.* Therefore, because the duty to interact is not a free-standing claim, Defendant is entitled to summary judgment on Count II of the Complaint.

23        Alternatively, even if the duty to interact was a free-standing claim, Defendant is entitled to summary judgment because, as discussed above, Plaintiff was not disabled. As a further alternative reason, even if the duty to interact is a free-standing claim, and if Plaintiff had established a question of fact regarding whether he was disabled, Defendant is entitled

to summary judgment on Court II of the Complaint because it satisfied the duty to interact in this case.[10]

More specifically with respect to Defendant's satisfaction of the duty to interact, Plaintiff avows that he requested that he be allowed to run the blade. Doc. #37-5, Ex. 3, ¶17. Defendant does not dispute that Plaintiff made this request and that Defendant considered this request. Doc. #36, Ex. E. at 35-36.[11] However, Defendant denied this request because four of Defendant's supervisors determined that the blade did not fit within Plaintiff's doctor's limitations of no bouncing or sudden jerking. *Id.*; Doc. #36, Ex. H.[12] Defendant was not required to "accommodate" Plaintiff by giving Plaintiff a job Defendant believed was in violation of Plaintiff's doctor's limitations. To hold otherwise would put employers in a position where compliance with the ADA was impossible.

---

[10] Clearly there is a duty to interact in good faith as part of the reasonable accommodation discussion. And the Court considers Defendant's compliance with this duty not only as an alternative holding if a free-standing failure to interact claim exists and if Plaintiff established an issue of fact as to whether he was disabled, but also as part of the Court's conclusion that Defendant reasonably accommodated Plaintiff as a matter of law in this case and no reasonable jury could conclude otherwise.

[11] From the deposition of Defendant's General Superintendent, Ron Anglin:
Q: [W]ere you made aware if [Plaintiff] asked any of the superintendents to run equipment other than a backhoe?
A: He asked to run a blade.
Q: ... Who did he ask to run a blade?
A: Harvey [White], Frank [Gray], and Willie [Aveena].
Q: Did they all tell you that?...
A. Yes.
Q: What conversation did you have with each of them regarding his request?
A: Harvey came up and said [Plaintiff] was constantly wanting to run a blade because he feels a blade is the only thing that wouldn't hurt his back. [I had] similar conversations with Frank and with Willie.
Q: ...[D]id you have a response for that?
A: I said he's on light duty, absolutely not. I said that's why he's not on one. They all agreed. That's why we didn't do it.

[12] From the affidavit of Frank Gray, "As a blade operator myself, I know that running a blade <u>can</u> and <u>will</u> hurt your back or further injure existing back injuries."

- 14 -

In this case, Plaintiff requested a particular and specific accommodation because Plaintiff "believed" it would not hurt his back based on only Plaintiff's opinion. Doc. #37-5, Ex. 3, ¶17 ("I [Plaintiff] asked my superintendent and my foreman to allow me to operate a blade ... because I believed it would not hurt my back.") Yet had Defendant given this accommodation and Plaintiff later injured himself, four of Defendant's supervisors would have to admit that they gave Plaintiff a job they knew violated his doctor's restrictions. The ADA does not permit an "accommodation" that violates medical restrictions. Thus, much like Plaintiff is not entitled to his "preferred" position, *Zivkovi*, 302 F.3d at 1089, Plaintiff is not entitled to a position that is in violation of his doctor's limitations. Therefore, the Court finds that Defendant's supervisors considering Plaintiff's request, but not honoring it for legitimate reasons, met the duty to interact.

**IV.   Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. #35) is granted and the Clerk of the Court shall enter judgment for the Defendant and against Plaintiff accordingly.

DATED this 17th day of March, 2009.

_____
James A. Teilborg
United States District Judge